IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Roy Sylvester Hunt, Jr., )
    Plaintiff, )
     )
v. ) 1:16cv1250 (CMH/MSN)
     )
Unit Manager Townes and Captain May, )
    Defendants. )

## MEMORANDUM OPINION

Roy Sylvester Hunt, Jr., a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was made to wait 18 days to be provided with a medically-prescribed bottom bunk during his incarceration at Lawrenceville Correctional Center ("LCC"). On November 8, 2017, defendants Unit Manager Townes and Captain May jointly filed a Motion for Summary Judgment with a supporting memorandum of law, and supplied plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 20 -21] Plaintiff has filed a response opposing defendants' motion along with a declaration. [Dkt. No. 24][1] Accordingly, the matter is now ripe for disposition. For the reasons which follow, defendants' Motion will be granted, and summary judgment will be entered in their favor. Plaintiff's Motion for Appointment of Counsel will be denied, as moot.

---

[1] Hunt's reply to the Motion for Summary Judgment was not filed with the court until March 27, 2018, long after the 21-day period prescribed by Fed. R. Civ. P. 56 (b)(2) had expired. It was accompanied by a letter from Hunt stating that he had originally mailed his opposition "back in February" but it was returned to him because he had used an incorrect zip code. [Dkt. No. 24] In deference to plaintiff's pro se status, the Court accepts the reply as timely filed and has considered it in preparing this Memorandum Opinion.

## I. Background

The following material facts are undisputed. Hunt was an inmate confined at Lawrenceville Correctional Center ("LCC") from on or about May 24, 2011 until June 23, 2015. There are approximately 1565 beds at LCC, which typically operates at or near capacity. [Dkt. No. 21, Ex. 1, May Aff. ¶ 5] Incoming inmates are given the highest priority on cell vacancies, so an LCC inmate may request but is not guaranteed reassignment to a vacant cell. Because many inmates require or prefer bottom bunks, bottom bunk cell vacancies are rare. Id. ¶ 6.

On February 20, 2015, Hunt was assigned to a top bunk in LCC cell 71-117. Id. ¶7; Plf. Dec. ¶ 5.[2] As a result, Hunt was assigned the top bunk and "was forced to sleep on a mattress on the floor." Plf. Dec. ¶6. He asked to be reassigned to a bottom bunk and was offered a bottom bunk in Building 40, but he refused that offer and instead requested a transfer to Building 70. May Aff. ¶ 5; Plf. Dec. ¶ 8.

From February 27 until March 5, 2015, LCC was on annual lockdown, which is done to interdict contraband that has entered the facility. May Aff. ¶ 6; Plf. Dec. ¶ 9. Inmate movements are minimized during this period, and as a result, inmate housing transfers are not permitted during a lockdown. May Aff. ¶ 8. Hunt complained during this period that he was physically suffering from sleeping on the floor. Plf. Dec. ¶ 11.

On March 1, 2015, Hunt "fell injurying [sic] himself trying to reach for his shirt off the top bunk which he was assign [sic]." Plf. Dec. ¶ 14. He was escorted to the medical department and seen by Nurse Segura, who treated him for his unspecified injury. Plf. Dec. ¶ 15. Hunt

---

[2]Hunt's declaration, which was stated under penalty of perjury to be true and correct but signed only with a typewriter rather than an original signature, is one of the attachments to his letter at Dkt. No. 24.

states that Nurse Segura then contacted Capt. May concerning Hunt's need for a bottom bunk assignment, id., while Capt. May does not recall such a conversation and does not believe the request was made. May Aff. ¶ 9. At any rate, LCC was on lockdown that day, and no bottom bunks were available in general population. May Aff. ¶ 10. In addition, LCC's medical unit is equipped with medical housing, which consists of single cells with bottom bunks. There thus would have been no need for Hunt to be moved elsewhere if medical personnel had believed him to be in urgent need of assignment to a bottom bunk. May Aff. ¶ 11.

On March 10 or 11, 2015, Hunt was moved to Building 40 and reassigned a bottom bunk. Plf. Dec. ¶ 16; May Aff. ¶ 9. He remained housed in that cell until he was transferred to a different institution on June 23, 2015. Id.

During the period relevant to this lawsuit, LCC followed the institutional grievance procedure set out in the Virginia Department of Corrections Operating Procedure 866.1 ("OP 866.1"). Jones Aff. ¶ 3.[3] As will be discussed in greater detail *infra*, Hunt failed to exhaust his administrative remedies as to any Regular Grievance he filed from January 1, 2015 until October 3, 2016, the date he filed this lawsuit. Dkt. No. 24, Ex. 2, 5; Jones Aff. ¶ 8.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on

---

[3]Christy M. Jones is the acting Institutional Grievance Coordinator at LCC. Her affidavit is Exhibit 3 to defendants' memorandum, and a copy of OP 866.1 is Exhibit 4.

the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Hunt's undisputed failure to exhaust his present claim administratively is fatal to his ability to litigate it successfully in federal court. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of

4

this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. Woodford, 548 U.S. at 96. To prevent this type of abuse, this Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. Moore, 517 F.3d at 725, 729.

Proper administrative exhaustion requires that "a prisoner must submit inmate complaints

5

and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) (Ellis, J.). A prisoner now must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective. Porter v. Nussle, 534 U.S. 516, 524 (2002). Moreover, an inmate now must exhaust administrative remedies, even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005) (Hilton, J.), aff'd, 127 Fed. App'x 680 (4th Cir. May 10, 2005).

Pursuant to OP 866.1, a regular grievance must be submitted within 30 calendar days from the date of the incident or occurrence, or from the date the incident or occurrence was discovered. Jones Aff. ¶ 7. Prior to doing so, the inmate is required to demonstrate that he made a good-faith effort to resolve his claim informally, which is accomplished by submitting an Informal Complaint to the appropriate Department Head. The criteria for acceptance of a Regular Grievance are set out in OP 866.1 and are explained on the back of the grievance form itself. If a grievance meets these criteria it is logged in a receipt is provided to the inmate. Only a single issue may be addressed in a Regular Grievance. An accepted Regular Grievance is subject to up to three levels of review, and an inmate must exercise all available appeals within the appropriate time limits to administratively exhaust a claim. Id.

Defendant May has submitted evidence demonstrating that Hunt failed to exhaust administrative remedies as to his present claim. According to VDOC's electronic records database, Hunt file a Regular Grievance on March 5, 2015, in which he complained that Unit

Manager Torres gave him the wrong copy of Emergency Grievance No. 92345. The Regular Grievance was returned to Hunt because he had failed to follow the Informal Complaint procedure prior to submitting the Regular Grievance. Hunt appealed this intake decision to the Regional Ombudsman and the decision was upheld. Jones Aff. ¶ 9.

On March 24, 2015, Hunt filed four Regular Grievances with reference to Informal Complaint Nos. LVCC-15-INF-724, -751, -752 and -753. All of these complaints concerned his assignment to a top bunk. INF No. 724 was returned to Hunt with instructions to him to provide a date of occurrence, and intake of the Regular Grievance was denied on that basis. The Regional Ombudsman upheld that decision on April 3, 2015. Jones Aff. ¶ 10.

INF No. 753 was returned to Hunt for insufficient information, and he was asked to attach a copy of his bottom bunk profile. Instead of doing so, Hunt appealed the intake decision to the Regional Ombudsman, and the decision was upheld. Jones Aff. ¶ 11.

The remaining two Regular Grievances Hunt filed on March 24, 2015 also complained about his assignment to a top bunk. The date of occurrence for both was February 19, 2015, so the thirty-day period within which he could have timely filed a Regular Grievance expired on March 21, 2015. Both of these Regular Grievances consequently were denied intake as untimely, and the Regional Ombudsman upheld those decisions on April 3, 2015. Jones Aff. ¶ 12. In short, all of Hunt's efforts to administratively grieve his bunk assignment were rejected for procedural deficiencies.

Following defendants' submission of the foregoing evidence regarding Hunt's failure to properly exhaust his present claim, Hunt failed to carry his burden to show a disputed issue of fact as to that point. Indeed, Hunt makes no mention whatever of the exhaustion requirement or

any efforts he took to satisfy it in his Brief in Opposition to Defendants' Summary Judgment Motion or in any of its attachments. [Dkt. No. 24] Consequently, it is undisputed that Hunt failed to follow the mandatory requirement fully and properly to exhaust his present claim, and defendants' Motion for Summary Judgment will be granted on that basis.[4] Woodford, 548 U.S. at 96; Moore, 517 F.3d at 725, 729. Hunt's Motion for Appointment of Counsel, which is included as an attachment to his Brief in Opposition to Defendants' Summary Judgment Motion [Dkt. No. 24] will be denied, as moot.

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted. An appropriate Order and judgment shall issue.

Entered this _4th_ day of _June_ 2018.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia

---

[4] Nonetheless, it is noted that even if plaintiff's claim were federally cognizable, it would fail on the merits. When Hunt first asked to be reassigned after he was given a top bunk on February 20, 2015 he was offered a bottom bunk placement in Building 40, but he opted to decline. No housing transfers could occur while LCC was on lockdown between February 27 and March 5, 2015, and Hunt was reassigned to a bottom bunk on March 11, six days after the lockdown ended. He does not allege that he suffered any significant physical or emotional injury as the result of having to sleep on the cell floor or in the top bunk during this 18-day period. Indeed, Hunt candidly admits that the only injury he sustained occurred when he reached for a shirt on the top bunk, not because he was forced to sleep in the bunk. These conditions were not sufficiently egregious to violate Hunt's Eighth Amendment rights. See Wilson v. Seiter, 501 U.S. 294, 298 (1991) ("The Constitution 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation."); Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.").